**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRAVIS LEROY BEAN, *Petitioner-Appellant*, <br><br> v. <br><br> DOLLY MATTEUCCI, Superintendent, Oregon State Hospital, *Respondent-Appellee*. | No. 19-35119 <br><br> D.C. No. 3:18-cv-01765-HZ <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted October 8, 2020
Portland, Oregon

Filed January 20, 2021

Before: Richard A. Paez and Johnnie B. Rawlinson,
Circuit Judges, and John Antoon II,* District Judge.

Opinion by Judge Paez;
Dissent by Judge Rawlinson

---

*The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel reversed the district court's denial of Travis Leroy Bean's 28 U.S.C. § 2241 habeas corpus petition, which challenged an Oregon Circuit Court order under *Sell v. United States*, 539 U.S. 166 (2003), authorizing involuntary medication to restore Bean's competency to stand trial for murder; and remanded for further proceedings.

Bean sought an order enjoining the *Sell* order on the grounds that his forcible medication, his custody at the Oregon State Hospital, and the state's failure to provide an immediate mechanism for review of the *Sell* order violated his Fourteenth Amendment right to due process.

The district court abstained under *Younger v. Harris*, 401 U.S. 37 (1971), determining that intervention by a federal court would be inappropriate given the important state interests at stake in the pending criminal prosecution.

The panel wrote that, in asserting that Bean's claim is not cognizable in habeas and that the district court therefore lacked subject-matter jurisdiction, the state mischaracterizes the cognizability question as a subject-matter jurisdiction issue. The panel wrote that the district court had subject-matter jurisdiction and the authority to rule on Bean's petition, but rather than exercising its subject-matter jurisdiction, the district court abstained under *Younger* and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

never reached the issue whether Bean's claim is cognizable in habeas.

The panel held that although the basic *Younger* criteria are satisfied, the irreparable harm exception to *Younger* applies in this case because the forcible administration of antipsychotic medications constitutes a particularly severe invasion of liberty and Bean's right to avoid forcible administration of medications cannot be fully vindicated after trial. The panel concluded that the district court therefore erred in abstaining, and left the issue of cognizability of Bean's claim in habeas for resolution by the district court.

Dissenting, Judge Rawlinson wrote that the majority fails to analyze whether Bean's claim falls "within the core of habeas as required" to establish jurisdiction under § 2241. She wrote that application of the principles set forth in *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc), leads to the inescapable conclusion that Bean's claim does not lie at the core of habeas corpus because there is no indication in the record that the injunction Bean seeks would terminate custody, accelerate release, or reduce the level of custody. Because the case was not properly brought as a habeas petition, Judge Rawlinson would remand it for the district court to determine if the case may be converted to a civil rights claim under 42 U.S.C. § 1983.

## COUNSEL

Oliver W. Loewy (argued), Assistant Federal Public Defender, Portland, Oregon, for Petitioner-Appellant.

Leigh A. Salmon (argued), Senior Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General; Office of the Attorney General, Salem, Oregon; for Respondent-Appellee.

## OPINION

PAEZ, Circuit Judge:

In this case, we consider whether the district court erred in denying Travis Leroy Bean's ("Bean") petition for a writ of habeas corpus based on abstention under *Younger v. Harris*, 401 U.S. 37 (1971). Bean's habeas petition challenged an Oregon Circuit Court order authorizing his involuntary medication to restore his competency to stand trial for murder. In abstaining, the district court determined that intervention by a federal court would be inappropriate given the important state interests at stake in the pending criminal prosecution. Bean contends that he faces irreparable harm from the threat of forced medication and that therefore the district court should have applied the extraordinary circumstances exception to *Younger* abstention. We hold that the district court erred in denying Bean's habeas petition on *Younger* abstention grounds, and we reverse and remand for further proceedings.

## I.

In September 2016, Bean was charged with two counts of murder in Douglas County, Oregon. In December 2016, the Douglas County Circuit Court entered an order finding Bean incompetent to stand trial because he suffered from a delusional disorder and committed him to the Oregon State Hospital ("OSH") for further evaluation and treatment. The court ordered the OSH to evaluate Bean to determine

"whether there is a substantial probability that, in the foreseeable future, the defendant will have the capacity to stand trial, pursuant to ORS [Oregon Revised Statute] 161.370(5)."

In March 2017, Dr. Benjamin Goldstein of the OSH notified the circuit court that Bean remained unable to aid and assist in his defense due to a delusional disorder. In Dr. Goldstein's opinion, Bean might become competent to stand trial within three to six months with treatment including antipsychotic medications. Dr. Goldstein further opined that Bean "demonstrated no danger to self or others or any grave disability" and thus did not qualify for involuntary medication through the state hospital. Later in March 2017, Bean's treating physician administratively applied for permission to forcibly medicate Bean, per ORS 161.370, but an Administrative Law Judge determined that Bean did not meet the criteria for involuntary medication.

In June 2017, Dr. Goldstein submitted a second evaluation to the court. Dr. Goldstein opined that there was "no substantial probability in the foreseeable future that Mr. Bean will be restored to trial competence." As Dr. Goldstein explained, delusional disorders do not improve on their own and antipsychotic medications were necessary to overcome Bean's disorder. But the OSH lacked authority to forcibly administer antipsychotic medications because Bean did not pose a danger to himself or others.

In August 2017, the Douglas County District Attorney moved the circuit court to issue an order directing that Bean be forcibly medicated to restore his competency to stand trial. In April 2018, the circuit court held an evidentiary hearing pursuant to *Sell v. United States*, 539 U.S. 166 (2003), and *State v. Lopes*, 322 P.3d 512 (Or. 2014). Under *Sell*, the government may forcibly administer antipsychotic

drugs to a mentally ill defendant facing serious criminal charges to restore the defendant's competency to stand trial "only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 539 U.S. at 179; *see also Lopes*, 322 P.3d at 524. Following the hearing, the circuit court concluded that the state had met its burden under *Sell* and entered an order on July 16, 2018, authorizing the state to forcibly administer antipsychotic drugs to restore Bean's competency to stand trial.

Unlike a federal district court's *Sell* order, which is immediately appealable under the collateral order doctrine, in Oregon a circuit court's *Sell* order is not directly appealable. The only avenue of review is a mandamus petition in the Oregon Supreme Court. *See, e.g.*, *Or. State Hosp. v. Butts*, 359 P.3d 1187, 1190 (Or. 2015). In July 2018, Bean sought a writ of mandamus from the Oregon Supreme Court directing the circuit court to strike the *Sell* order. The Oregon Supreme Court denied the writ.

In November 2018, Bean filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the district court for the District of Oregon. Section 2241 provides a general grant of habeas authority that is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment, such as a defendant in pretrial detention. *See Dominguez v. Kernan*, 906 F.3d 1127, 1135 (9th Cir. 2018). Bean sought an order enjoining the state court's *Sell* order on three grounds, asserting that (1) his forcible medication, (2) his custody at OSH, and (3) the state's failure to provide an immediate mechanism for

review of the *Sell* order violated his Fourteenth Amendment right to due process.

In response to Bean's petition, the state argued that in light of the ongoing criminal prosecution, the district court should abstain under *Younger.* Alternatively, citing *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc), the state asserted that Bean's claims were not cognizable in habeas because he did not challenge the validity of his confinement or its duration and that the court should dismiss the petition on that basis. The district court denied Bean's habeas petition on *Younger* abstention grounds without reaching the question of whether Bean's claim is cognizable in habeas. The district court also declined to issue a certificate of appealability.

A previous panel of our court concluded that Bean's first two claims "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(3), and issued a certificate of appealability on the following issue: "whether the district court erred in denying the petition based on the abstention doctrine pursuant to *Younger*."

## II.

We review de novo a district court's *Younger* abstention determination. *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018). "We conduct the *Younger* analysis 'in light of the facts and circumstances existing at the time the federal action was filed.'" *Id.* (quoting *Portrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 881 n.6 (9th Cir. 2011)).

## III.

Before turning to Bean's challenge to the district court's abstention under *Younger*, we first address the state's

assertion that Bean's claim is not cognizable in habeas and that therefore the district court lacked subject-matter jurisdiction. We conclude that the state mischaracterizes the cognizability question as a subject-matter jurisdiction issue.

In *Nettles*, upon which the state relies, we applied the principle that habeas relief is available only for state prisoner claims that lie at the core of habeas and that an action pursuant to 42 U.S.C. § 1983 "is the exclusive vehicle for claims that are not within the core of habeas." 830 F.3d at 930, 931. There, success on the merits of the state prisoner's claim for expungement of a disciplinary violation received in prison would not necessarily have led to immediate or speedier release from prison. We therefore held that the claim did not fall within the core of habeas corpus and that the petitioner had failed to allege a cognizable claim for habeas relief. *Id*. at 935. In short, *Nettles* is about a petitioner's obligation to satisfy the elements of his claim for habeas relief and not about a district court's subject-matter jurisdiction. *See generally Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." (emphases removed)).

A district court has subject-matter jurisdiction to consider a habeas petition alleging a violation of federal law under federal question jurisdiction. 28 U.S.C. § 1331; *Dunne v. Henman*, 875 F.2d 244, 248 (9th Cir. 1989). Provided certain requirements are satisfied and the claim is within the core of habeas as required by *Nettles*, 28 U.S.C. § 2241 grants district courts the authority to issue habeas relief. *See also* 28 U.S.C. § 2243. Thus, the district court had subject-matter jurisdiction and the authority to rule on

Bean's petition.**[1]** But rather than exercising its subject-matter jurisdiction, the court abstained under *Younger* and never reached the issue of whether Bean's claim is cognizable in habeas.**[2]** Satisfied that the district court indeed had subject-matter jurisdiction, we turn to the issue certified for our review: the propriety of the district court's decision to abstain under *Younger* from exercising that jurisdiction.

## IV.

Bean argues that the district court erred in dismissing his habeas petition on *Younger* abstention grounds because the doctrine does not apply where there is a showing of "extraordinary circumstances." According to Bean, his involuntary medication would effectively be unreviewable later and constitutes irreparable harm, thus triggering the extraordinary circumstances exception to the *Younger* doctrine. In response, the state contends that even assuming irreparable harm, federal intervention is not warranted. The state argues that the extraordinary circumstances exception only applies where a federal court's intervention is "discrete

---

**[1]** The Supreme Court has stated, "Congress in 1867 sought to provide a federal forum for state prisoners having constitutional defenses by extending the habeas corpus powers of the federal courts to their constitutional maximum. Obedient to this purpose, we have consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint." *Fay v. Noia*, 372 U.S. 391, 426 (1963), *abrogated on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991).

**[2]** Given the nature of Bean's claim, whether he can show that he is entitled to habeas relief or instead should seek redress under 42 U.S.C. § 1983 is a complex question. We will remand so that the district court can address that issue in the first instance.

and finite" and that *Younger*'s purpose is to avoid the entanglement and undue interference that might result here.

In *Younger*, the Supreme Court held that federal courts should abstain from staying or enjoining pending state criminal prosecutions absent extraordinary circumstances. 401 U.S. at 45.  *Younger* applies "when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Page v. King*, 932 F.3d 898, 901–02 (9th Cir. 2019) (quoting *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018)).

Here, Bean does not dispute that this case satisfies the four *Younger* factors.  As the district court concluded, (1) there is an ongoing criminal prosecution in state court, (2) the state has an important interest in prosecuting a murder case, (3) Bean had an adequate opportunity to raise constitutional challenges, both during the *Sell* hearing and in his subsequent application for mandamus, and (4) the requested relief of invalidating the *Sell* order would have the practical effect of enjoining the state criminal proceeding.

But even where the *Younger* factors are satisfied, "federal courts do not invoke it if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Arevalo*, 882 F.3d at 765–66 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).  We have recognized an irreparable harm exception to *Younger. See World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987) (explaining that *Younger* does not apply "under extraordinary circumstances

where the danger of irreparable loss is both great and immediate"). We have previously applied the irreparable harm exception to claims raised by pretrial detainees in two contexts.

First, *Younger* does not apply where a pretrial detainee presents "[a] colorable claim that a state prosecution [would] violate the Double Jeopardy Clause." *Dominguez*, 906 F.3d at 1131 n.5 (citing *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992)). "The Fifth Amendment's protection against double jeopardy . . . 'is not against being twice punished, but against being twice put in jeopardy.'" *Mannes*, 967 F.2d at 1312 (quoting *United States v. Ball*, 163 U.S. 662, 669 (1896)). A post-trial ruling that the state violated the Double Jeopardy Clause would thus come too late. "Because the accused already has been subjected to the ordeal of trial, overturning such a conviction is not a complete remedy for the double jeopardy violation." *Id.* at 1313. And "[b]ecause full vindication of the right necessarily requires intervention before trial," *Younger* does not apply. *Id.* at 1312.

Second, we have held that *Younger* does not apply where a petitioner raised a due process challenge to his pretrial detention in the context of a state civil sexually violent predator proceeding. *Page*, 932 F.3d at 901–02. In *Page*, we held that abstention was inappropriate for a challenge to pretrial detention on the basis of a stale and scientifically invalid probable cause determination. *Id.* at 904. As the panel explained, if the petitioner was correct that his pretrial rights were violated, "then regardless of the outcome at trial, a post-trial adjudication of his claim [would] not fully vindicate his right to a current and proper pretrial probable cause determination." *Id.* Similarly, in *Arevalo*, we held that *Younger* abstention did not apply to a pretrial detainee's

claim that he had been incarcerated for over six months without a constitutionally adequate bail hearing. 882 F.3d at 766–67. As we explained, "[d]eprivation of physical liberty by detention constitutes irreparable harm," and abstention was inappropriate where that right could not fully be vindicated after trial. *Id.* at 767.

In contrast, we have not applied the irreparable harm exception to pre-conviction habeas petitions seeking to vindicate a petitioner's speedy trial affirmative defense. *See Brown v. Ahern*, 676 F.3d 899, 900 (9th Cir. 2012); *Carden v. Montana*, 626 F.2d 82, 83 (9th Cir. 1980). As we explained in *Page*, that is because "the speedy trial defense primarily protects the integrity of the trial itself" and, like most trial rights, "can be vindicated through reversal of the improperly-obtained conviction." 932 F.3d at 904. In contrast, pretrial rights, like those protecting unlawful pretrial detention, "cannot be vindicated post-trial." *Id.* at 905.

## V.

In at least two ways, Bean's due process right to avoid forcible administration of antipsychotic medications more closely resembles the contexts in which we have applied the irreparable harm exception.

First, as in *Page* and *Arevalo*, the right implicates a deprivation of physical liberty. The forcible injection of medication represents a "substantial interference with [a] person's liberty." *Riggins v. Nevada*, 504 U.S. 127, 134 (1992) (quoting *Washington v. Harper*, 494 U.S. 210, 229 (1990)). That is the case here. According to the OSH's expert doctor who testified at the *Sell* hearing, Dr. James Peykanu, Bean will be subject to a physically coercive response each time he refuses medication. Multiple staff

will confront Bean, overpower him, force him into restraints, and place him in isolation if necessary, until he is injected with antipsychotic drugs.**³** That process will recur "every day or multiple times a day" for as long as Bean resists medication while the circuit court's order is in force. The process could last for months.

The due process right at stake here is stronger than those implicated in *Page* and *Arevalo* because the forcible injection of antipsychotic drugs constitutes a "particularly severe" invasion of liberty. *Riggins*, 504 U.S. at 134. First, antipsychotic drugs "'tinker[] with the mental processes,' affecting cognition, concentration, behavior, and demeanor." *United States v. Williams*, 356 F.3d 1045, 1054 (9th Cir. 2004) (alteration in original) (citation omitted) (quoting *Mackey v. Procunier*, 477 F.2d 877, 878 (9th Cir. 1973)). "While the resulting personality change is intended to, and often does, eliminate undesirable behaviors, that change also, if unwanted, interferes with a person's self-autonomy, and can impair his or her ability to function in particular contexts." *Id.* Second, antipsychotic drugs "can have serious, even fatal, side effects," including irreversible neurological disorders. *Riggins*, 504 U.S. at 134 (quoting *Harper*, 494 U.S. at 229). For these reasons, the Supreme Court has "refus[ed] to permit involuntary medication except in highly-specific factual and medical circumstances." *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1136 (9th Cir. 2005); *see also United States v. Ruiz-Gaxiola*, 623 F.3d 684, 691 (9th Cir. 2010).

---

**³** The state proposed medicating Bean with Seroquel, Risperdal, Haldol, or Zyprexa. None are FDA-approved for treatment of delusional disorder.

As in each of the cases applying the irreparable harm exception, Bean's right to avoid forcible administration of antipsychotic medications cannot be fully vindicated after trial. The Supreme Court recognized as much in *Sell* when it held that the district court's forcible medication order was immediately appealable under the collateral order doctrine. 539 U.S. at 176–77 ("By the time of trial Sell will have undergone forced medication—the very harm that he seeks to avoid. He cannot undo that harm even if he is acquitted. Indeed, if he is acquitted, there will be no appeal through which he might obtain review.").

Bean's right to avoid forcible administration of antipsychotic medications is unlike the speedy trial defense cases. Those cases concerned a right whose primary purpose is to protect the integrity of the trial. To be sure, a person may have "a right to avoid forced medication, perhaps in part because medication may make a trial unfair." *Id.* at 177. But regardless of whether he might face trial, a person "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Harper*, 494 U.S. at 221–22 (discussing forcible medication of an inmate who is a danger to himself or others). Thus, although an ordinary appeal can vindicate the right to avoid an unfair trial on account of forcible medication, it "comes too late" to enforce the right to avoid the administration of the drugs. *Sell*, 539 U.S. at 177. The district court was thus incorrect in suggesting that Bean, if he were to become competent after forcible medication and is convicted, could fully vindicate his due process rights on appeal or through post-conviction habeas petitions.

The state's arguments that *Younger* should nonetheless apply are not persuasive. The state suggests that the

irreparable harm exception should only apply when federal intervention would be "discrete and finite." But that was not true in *Page* or *Arevalo*, as the petitioners in those cases could have obtained habeas relief, received a state pretrial hearing, and again sought federal intervention on the grounds that the new hearings were again constitutionally inadequate. Thus, even if there were a risk of "serial litigation," it would not be grounds for limiting the irreparable harm exception here.

Nor are any of the unpublished district court cases cited by the state persuasive. In the closest case, *Pagatakhan v. Foulk*, the district court concluded that extraordinary circumstances did not exist where a pretrial detainee sought to preliminarily enjoin forcible medication *before* the state filed its *Sell* petition in state court. No. C 09-5495 SI(pr), 2010 WL 3769282, at *1 (N.D. Cal. Sept. 21, 2010). There, federal intervention would have interfered with the state court's *Sell* proceedings. In contrast, Bean's *Sell* proceeding is complete, and Bean has exhausted his state remedies prior to seeking federal habeas relief.

Here, "the danger of irreparable loss is both great and immediate." *Younger*, 401 U.S. at 45. Thus, although the basic *Younger* criteria are satisfied in this case, the irreparable harm exception to *Younger* applies and the district court erred in abstaining.

We leave the issue of the cognizability of Bean's claim in habeas for resolution by the district court.[4] We accordingly reverse the district court's order denying Bean's

---

[4] If the district court concludes that Bean's claim is not within the scope of habeas, it should consider converting the claim into one under 42 U.S.C. § 1983, as outlined in *Nettles*. 830 F.3d at 935.

petition based on *Younger* abstention and remand for further proceedings.

**REVERSED AND REMANDED.**

RAWLINSON, Circuit Judge, dissenting:

The majority resolves this appeal by ignoring a glaring question of jurisdiction: whether this case was properly brought as a habeas petition pursuant to 28 U.S.C. § 2241. The majority avoids addressing this inquiry by acknowledging that the district court had "authority to issue habeas relief" if "the claim is within the core of habeas as required" by our en banc decision in *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc). *Majority Opinion*, p. 8–9. However, the majority completely fails to analyze whether this petitioner's claim falls "within the core of habeas as required" to establish jurisdiction under § 2241. *See Nettles*, 830 F.3d at 922, 927 (reviewing the "district court's determination that it does not have jurisdiction over a habeas corpus petition").

Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Gilbertson v. Albright*, 381 F.3d 965, 982 n.17 (9th Cir. 2004) (en banc) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). *Younger* abstention is a "circumscribed exception to the overarching rule that the federal courts must exercise the jurisdiction granted to them by Congress under the Constitution." *Green v. City of Tucson*, 255 F.3d 1086, 1104 (9th Cir. 2001) (en banc). Indeed, we have described *Younger* abstention not as a conferral of jurisdiction but as "a jurisprudential doctrine rooted in overlapping principles of equity, comity, and

federalism." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091–92 (9th Cir. 2008). Moreover, the abstention doctrine is an affirmative defense that may be waived. *See Brown v. Ahern*, 676 F.3d 899, 901–03 (9th Cir. 2012). Conversely, the existence of jurisdiction or the lack thereof is unwaivable. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. . . .") (citation omitted). These defining characteristics eliminate *Younger* abstention as a basis of jurisdiction in this case.

Additional support for our obligation to address whether habeas jurisdiction exists is the parties' approach to this case, as well as the district court's analysis. The parties assert jurisdiction over this case under 28 U.S.C. § 2241, not the abstention doctrine. The district court also designated 28 U.S.C. § 2241 as the basis for its jurisdiction. Faced with this indisputable procedural and legal posture, we cannot avoid our obligation to determine whether subject-matter jurisdiction over this case exists under § 2241. *See Arbaugh*, 546 U.S. at 514; *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) ("Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. . . .") (citations and internal quotation marks omitted).

The abstention determination does not address whether subject-matter jurisdiction exists. Rather, it addresses whether existing jurisdiction should be exercised. *See Brown*, 676 F.3d at 900 (explaining that application of

*Younger* abstention "preclude[s] the exercise of federal jurisdiction"). A separate jurisdictional inquiry is required before we even address *Younger* abstention. *See Steel Co.*, 523 U.S. at 94 ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. . . .") (citation omitted). Jurisdiction must "be established as a threshold matter." *Id.* This requirement "is inflexible and without exception." *Id.* at 95 (citation and internal quotation marks omitted).

Faced with this inexorable command, the majority nevertheless assiduously avoids examination of our subject-matter jurisdiction. This approach is blatantly inconsistent with our precedent and with Supreme Court precedent. *See id.* ("readily refut[ing]" assertion "that a court may decide the cause of action before resolving Article III jurisdiction") (emphasis omitted). The majority has put the merits cart before the jurisdictional horse, a course the Supreme Court has expressly disapproved. *See id.* Properly applying applicable precedent, we lack jurisdiction because the claim brought by Petitioner-Appellant Travis Leroy Bean does not fall within the core of habeas claims permitted to proceed under § 2241.

In *Nettles*, we acknowledged the potential overlap between cases brought by state prisoners under the habeas statutes and under 42 U.S.C. § 1983. *See* 830 F.3d at 927. We then proceeded to clarify in detail the distinction between the two. We explained that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)). We then "adopt[ed] the

. . . rule that a § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus." *Id.*

We traced the origin of the habeas-§ 1983 distinction to the Supreme Court's decision in *Preiser v. Rodriguez*, 411 U.S. 475 (1973). *See id.* That case involved an action brought by state prisoners under § 1983 for restoration of lost good-time credits. *See Preiser*, 411 U.S. at 477. If restored, the good-time credits would have entitled the prisoners to immediate relief. *See id.* The Supreme Court concluded that habeas was the exclusive remedy for these claims, as the anticipated release if successful placed the claims within the "traditional scope of habeas corpus." *Id.* at 487.

In *Nettles*, we discussed cases decided post-*Preiser* that adhered to the *Preiser* analysis of claims brought by state prisoners, including:

- *Wolf v. McDonnell*, 418 U.S. 539 (1974) - Plaintiffs' claims for restoration of good-time credits were core habeas proceedings. *See id.* at 554. However, challenges to the validity of the procedures for assessing loss of good-time were not core habeas proceedings. *See id.* at 554–55.

- *Edwards v. Balisok*, 520 U.S. 641 (1997) - Plaintiff's claim alleging due process violations for procedures used in a disciplinary hearing that resulted in deprivation of good-time credits was not properly brought under § 1983. *See id.* at 647–48. The claim for prospective

injunctive relief was properly brought under § 1983. *See id.* at 648.

- *Wilkinson v. Dotson*, 544 U.S. 74 (2004) - Plaintiffs' claims challenging the procedures used to determine parole eligibility/suitability did not fall within "the core of habeas corpus" because "neither prisoner's claim would necessarily spell speedier release." *Id.* at 82. Rather, at most the prisoners could expect only speedier consideration of a new application or a new parole hearing. *See id.*

- *Skinner v. Switzer*, 562 U.S. 521 (2011) - Plaintiff's action seeking DNA testing was not required to be pursued in an application for habeas relief because the results "would not necessarily imply the invalidity of his conviction." *Id.* at 534 (internal quotation marks omitted). Although the DNA results "might prove exculpatory" the results could also "prove inconclusive or they might further incriminate." *Id.* (citation omitted).

From these series of cases, we gleaned the following principles:

- o The Supreme Court has made clear that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas.

o  Habeas is the exclusive vehicle for state prisoner claims where success in that action would necessarily demonstrate the invalidity of confinement or its duration.

o  If the invalidity of the proceedings would not necessarily affect the length of time to be served, the claim falls outside the core of habeas.

o  When a prisoner's claim would not necessarily spell speedier release, that claim does not lie at the core of habeas corpus, and may be brought, if at all, under § 1983.

*Nettles*, 830 F.3d at 929–30 (citations and internal quotation marks omitted).

We repeated the following quote from the Supreme Court decision in *Skinner*:

It suffices to point out that the state has found no case, nor has the dissent, in which the Court has recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody.

*Id.* at 930 (citation, alteration, and internal quotation marks omitted).

Consistent with our survey of Supreme Court precedent, we held that " if a state prisoner's claim does not lie at the core of habeas corpus, it may not be brought in habeas

corpus but must be brought, if at all, under § 1983. *Id.* at 931 (citation and internal quotation marks omitted).

Application of the principles set forth in *Nettles* leads to the inescapable conclusion that the claim brought by the petitioner in this case "does not lie at the core of habeas corpus." *Id.* As described by the majority, the petitioner seeks to enjoin the State of Oregon from forcibly medicating him to render him competent to stand trial. There is absolutely no indication in the record that enjoining the State from forcibly medicating the petitioner would "terminate custody, accelerate the future date of release from custody, [or] reduce the level of custody." *Id.* at 930 (citation, alteration, and internal quotation marks omitted). Rather, if the petitioner succeeds on his claim, the only effect would be the continued inability of the State to bring the petitioner to trial due to his mental incompetency. *See United States v. Ruiz-Gaxiola*, 623 F.3d 684, 688 (9th Cir. 2010). Because this case was not properly brought as a habeas petition, it should be remanded for the district court to determine if the case may be converted to a civil rights claim under § 1983. *See Nettles*, 830 F.3d at 936. We lack authority to do anything more. *See Steel Co.*, 523 U.S. at 95 ("When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, *not of the merits*, but merely for the purpose of correcting the error of the lower court in entertaining the suit.") (citations and internal quotation marks omitted) (emphasis added).

Because the majority opinion assumes jurisdiction where none exists, I respectfully dissent. *See id.* at 93 (criticizing the Ninth Circuit for "find[ing] it proper to proceed immediately to the merits question, despite jurisdictional objections").