**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 1 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JUBAIR AHMAD,<br><br>       Petitioner-Appellant,<br><br> v.<br><br>ISRAEL JACQUEZ, Warden, Federal<br>Detention Center,<br><br>       Respondent-Appellee. | No.   20-35536<br><br>D.C. No. 2:19-cv-01216-TSZ<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted May 5, 2021
Seattle, Washington

Before:  CHRISTEN and BENNETT, Circuit Judges, and SILVER,[**] District Judge.
Concurrence by Judge SILVER

     Federal prisoner Jubair Ahmad appeals the district court's dismissal of his 28

U.S.C. § 2241 habeas corpus petition, which challenged the Bureau of Prisons's

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

("BOP") denial of his request to be transferred to a prison closer to his family pursuant to 18 U.S.C. § 3621(b) ("First Step Act"). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

In 2012, Ahmad, a native of Pakistan, pleaded guilty in the Eastern District of Virginia to providing material support and resources to a foreign terrorist organization in violation of 18 U.S.C. § 2339B. He was sentenced to 144 months' imprisonment and has a projected release date of November 21, 2021. In his plea agreement, Ahmad acknowledged that he was removable from the United States because of his crime and waived any right to challenge or seek relief from removal.

Ahmad is currently housed in the Federal Detention Center SeaTac in SeaTac, Washington ("SeaTac"). Ahmad has an active Immigration and Customs Enforcement ("ICE") detainer and will be released into ICE custody upon completion of his sentence, pending removal. Before enactment of the First Step Act, the BOP had a "nearer release" program outlined in its 2006 Program Statement that provided that the BOP would attempt to place a prisoner "within 500 miles of his or her release residence." The "release residence" was defined as "[t]he verifiable destination to which an inmate realistically plans to reside upon release from Bureau custody." The Program Statement also provided that "[o]rdinarily, placement within 500 miles of the release [residence] is to be considered reasonable, regardless of whether there may be an institution closer to" that residence. It also

2

provided that inmates subject to ICE detainers "will not be transferred for nearer release purposes since they will be returning to the community outside, rather than inside, the United States upon release."

The First Step Act contained a provision very similar to the BOP's existing nearer release program. Section 3621(b) provides that, subject to certain factors, the BOP shall place a prisoner "in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence." 18 U.S.C. § 3621(b). The First Step Act also contained a jurisdiction stripping provision regarding the nearer release placement: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." *Id.* After the First Step Act was enacted, the BOP amended certain elements of its Program Statement, including parts pertaining to nearer release transfers, but it did not amend the portion of its Program Statement that provided that inmates subject to an ICE detainer were not eligible for a nearer release transfer.

In January 2019, citing the First Step Act, Ahmad informally requested a transfer to a facility in Woodbridge, Virginia, which would be within 500 miles of his family. His request was denied because of his ICE detainer. Ahmad then made a formal request for a transfer to Warden Israel Jacquez, writing that the First Step Act "does not consider immigration status or citizenship" and elaborated that he was

"not requesting a 'near release' transfer"; but rather, "a transfer to be closer to [his] family . . . under [the First Step Act]." The warden denied his request for the same reason, explicitly treating Ahmad's request as a nearer release transfer request. Ahmad administratively appealed this request to both the Regional Director of the BOP and the National Inmate Appeals Administrator. Both appeals were denied. Ahmad does not specifically contend in any of his administrative filings that the ICE detainer policy in the BOP's Program Statement violates the First Step Act. Rather, in response to the Warden's statement about the First Step Act not having been put in place, he claimed that the BOP is obligated to implement the First Step Act.

In August 2019, Ahmad filed a pro se petition for habeas corpus under 28 U.S.C. § 2241, seeking an order compelling the BOP to "recognize the changes in 18 U.S.C. [§] 3621(b) as amended by the First Step Act, and to implement these changes immediately" and to "reconsider his transfer request in consideration of [those] changes." The district court dismissed Ahmad's habeas petition for lack of jurisdiction.

All parties agree that pursuant to 18 U.S.C. § 3621(b), Congress stripped federal courts of jurisdiction to review the BOP's individual designations of an inmate's place of imprisonment. Ahmad nevertheless contends that the court has jurisdiction because his claim is "an effort to give effect to the statutory requirement that the BOP sought to circumvent through regulatory action." In other words,

4

Ahmad argues that the BOP Program Statement contravenes the specific statutory mandate in the First Step Act. However, Ahmad consistently challenged his own individual designation in his administrative proceedings and in his habeas petition.[1] Pursuant to § 3621(b), we lack jurisdiction to consider Ahmad's individual challenge to the BOP's transfer decision.

Though § 3621(b) strips the court of jurisdiction to consider Ahmad's individual challenge, it does not preclude review of all challenges that might implicate individual designation decisions. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991) (explaining that a statute precluding "judicial review of *a determination* respecting an application for an adjustment of status" precludes "review of individual denials of . . . status, rather than . . . general collateral challenges to unconstitutional practices and policies used by the agency in processing applications" (citation omitted) (emphasis added)). We have held that "[a]lthough a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or exceeded its

---

[1] The Magistrate Judge (whose decision was adopted by the district court) noted:
> "[Ahmad] challenges the denial of his request for a transfer . . . and asks the [c]ourt to transfer him to a facility within 500 miles of his primary residence in Virginia . . . , indicating an individual challenge. Thus, the [c]ourt concludes that any individual challenge to the BOP's denial of [Ahmad's] request for a transfer under § 3621(b) should be denied for lack of jurisdiction."

statutory authority when it acted pursuant to 18 U.S.C. § 3621." *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016). But to bring such a claim, a prisoner must exhaust his administrative remedies. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012).

The government argues that § 3621(b) strips the court of jurisdiction to hear even a properly exhausted claim that the BOP exceeded its statutory authority in its Program Statement, because "[t]here is no part of [Ahmad's] claim that can be severed from his challenge to BOP's designation decision and survive on its own." The government also argues that habeas is not a proper vehicle for this type of claim however characterized. Finally, the government argues that Ahmad did not properly exhaust his administrative remedies. We reach only the third of these three arguments.

A close examination of Ahmad's administrative request for a transfer and his appeals shows that Ahmad did not make the argument he is making now. Administratively, Ahmad sought a "nearer release transfer" to be placed at a facility within 500 miles of his family's home in Virginia, even though he attempted to disclaim the term "nearer release transfer" and in its stead cited the First Step Act.[2] He also asked that the First Step Act be implemented by the BOP. But his

---

[2] In his appeal to the National Inmate Appeals Administrator, Ahmad raised other challenges to the programming at SeaTac that are not at issue in this appeal.

administrative appeals did not specifically contend that the BOP exceeded its statutory authority in failing to amend the BOP Program Statement, specifically vis-à-vis the policy that provides that prisoners subject to an ICE detainer are ineligible for nearer release transfers. Our concurring colleague concludes it would be futile to require Ahmad to exhaust his broader challenge to the BOP program statement, *i.e.*, his challenge that the Program Statement deviated from statutory authority. Concurrence at 5. But because Ahmad never raised his broader challenge to the BOP Program Statement in his administrative proceedings, we cannot say the BOP "would almost certainly have denied" the challenge, and therefore we decline to waive the exhaustion requirement as futile. *Fraley v. U.S. BOP*, 1 F.3d 924, 925 (9th Cir. 2013). The claim Ahmad raises here is therefore unexhausted.

**AFFIRMED.**



*Ahmad v. Jacquez*, No. 20-35536
Silver, District Judge, concurring:

I agree the jurisdiction-stripping provision of 18 U.S.C. § 3621(b) does not

bar Ahmad's claim. But I do not agree the exhaustion principles applicable to

habeas petitions bar Ahmad's claim. Therefore, I would reach the issue litigated

below and on appeal: whether the type of relief Ahmad is seeking is cognizable in

habeas. It is not. Accordingly, the dismissal of Ahmad's habeas petition should be

affirmed, but for different reasons than those set forth in the memorandum

disposition.

## I. Administrative Exhaustion

Generally, a habeas petitioner is required to "exhaust all available judicial

and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*,

678 F.3d 1042, 1045 (9th Cir. 2012) (citation omitted). That particular

"exhaustion requirement is subject to waiver in § 2241 cases because it is not a

jurisdictional prerequisite. Typically, exhaustion can be waived [by the court] if

pursuing those [administrative] remedies would be futile." *Id.* (citation and

quotation marks omitted). When a federal prisoner wishes to challenge an official

Bureau of Prisons ("BOP") policy, exhaustion is excused because it would be

futile. Thus, a challenge to a BOP policy set forth in regulations need not be

exhausted. *Id.* at 1045-46. Similarly, a challenge to a less formal policy, such as a

BOP Program Statement, need not be exhausted. *Fraley v. U.S. Bureau of Prisons*,

1

1 F.3d 924, 925 (9th Cir. 1993). Accordingly, if Ahmad's claim is viewed as a challenge to the BOP Program Statement regarding eligibility for a "nearer release transfer," he was not required to exhaust his administrative remedies before filing his § 2241 petition.

The memorandum disposition recognizes the futility exception to exhaustion but concludes "we cannot say the BOP would almost certainly have denied [Ahmad's] challenge." This appears to be a statement that it is possible BOP officials would have ignored BOP policy when resolving an administrative grievance from Ahmad containing, in the memorandum disposition's words, a "broader challenge to the BOP program statement." If that were a possibility, the futility exception would never apply regarding policy challenges. It is always theoretically possible BOP officials will act contrary to policy in resolving an administrative grievance. The exhaustion requirement for habeas petitions has not been interpreted so strictly. *See, e.g.*, *Ward*, 678 F.3d at 1046 (concluding administrative relief "would unquestionably have been denied" because BOP policy precluded relief).

The memorandum disposition also finds Ahmad's administrative grievances insufficient because they did not contain "the argument he is making now." Ahmad is described as now arguing "the BOP exceeded its statutory authority in failing to amend the BOP Program Statement, specifically vis-à-vis the policy that

provides that prisoners subject to an ICE detainer are ineligible for nearer release transfers." That is not Ahmad's position.

During the administrative process Ahmad repeatedly asked for a transfer pursuant to the First Step Act. BOP officials responded that BOP policy was that individuals with ICE detainers are not eligible for "nearer release transfers" under the BOP policy that predated the First Step Act. Ahmad then made clear he was seeking a transfer under the First Step Act, not under the BOP policy regarding "nearer release transfer." Thus, Ahmad argued in an administrative grievance "[t]he statute under which I requested the transfer, 18 USC 3621(h) [sic], does not contemplate a prisoners [sic] deportation status, only the primary residence and the proximity to the prisoners [sic] family." BOP officials responded the "nearer release transfer" policy meant Ahmad was ineligible for a transfer. When Ahmad filed his pro se habeas petition, he argued he was seeking a "transfer in accordance with 18 USC 3621(b) as amended by the First Step Act." Later his counsel described Ahmad's argument as a claim that the BOP was ignoring the First Step Act by enforcing its policy regarding "nearer release transfers." And on appeal, Ahmad again argued he was challenging "the implementation of a BOP policy that contradicts a congressional mandate." Thus, throughout the administrative process and litigation, Ahmad's argument has always been that the BOP was refusing to comply with the First Step Act.

3

The memorandum disposition faults Ahmad for now arguing the BOP "exceeded its statutory authority in failing to amend the BOP Program Statement." But there is no indication Ahmad has ever been interested in a claim that the BOP erred by "failing to amend" its Program Statement. That is, neither Ahmad's grievances nor this litigation are focused on persuading the BOP to change the Program Statement. Instead, Ahmad has always been interested in convincing the BOP to deem him eligible for a transfer under the First Step Act.

Even though Ahmad was not required to exhaust a challenge to official BOP policy, the present record establishes Ahmad properly exhausted the claim he brought in his habeas petition. Dismissal of Ahmad's habeas petition cannot be affirmed based on a failure to exhaust.

## II.    Cognizability in Habeas

The memorandum disposition avoids deciding whether the district court correctly dismissed Ahmad's habeas petition for lack of jurisdiction. While there was jurisdiction to hear the petition, the type of relief Ahmad is seeking cannot be obtained through habeas. Therefore, we must affirm the district court.

The district court did not have the benefit of *Bean v. Matteucci*, 986 F.3d 1128 (9th Cir. 2021), in evaluating whether there was jurisdiction to hear Ahmad's habeas petition. As explained in *Bean*, there is a difference between a claim being "cognizable" in habeas and there being no subject matter jurisdiction to hear a

4

habeas petition. *Id.* at 1132–33. When a habeas petitioner meets the threshold requirements for bringing a habeas petition, but he seeks a form of relief not available by way of a habeas petition, there is jurisdiction but the petition is not "cognizable." *Id.* Ahmad met the jurisdictional requirements to file a habeas petition meaning his petition could not be dismissed on jurisdictional grounds.

The Ninth Circuit has not provided definitive guidance on the scope of relief available through a 28 U.S.C. § 2241 petition for a federal prisoner. In two opinions, the Ninth Circuit noted that petitions challenging "the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (citations omitted); *Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008) (quoting *Hernandez*). Ahmad seizes on these references to "location" and argues his petition, seeking relief connected to the location of his confinement, is properly brought as a § 2241 petition. That is not correct.

Most of the Ninth Circuit cases involving § 2241 petitions present situations where there was a possibility the prisoner would be released from custody earlier. *See, e.g.*, *Reeb v. Thomas*, 636 F.3d 1224, 1225 (9th Cir. 2011) (addressing § 2241 petition involving possibility of "up to a one-year reduction in a prisoner's sentence"); *Lane v. Salazar*, 911 F.3d 942, 947 (9th Cir. 2018) (addressing § 2241 petition involving loss of good time credits). There is also authority recognizing a

§ 2241 petitioner may proceed when he is seeking relief from "greater restrictions of his liberty, such as disciplinary segregation." *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) (citations omitted), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016). But Ahmad has not cited any Ninth Circuit authority allowing a § 2241 petition to proceed when the petitioner was seeking a straightforward transfer between BOP locations.

Considering existing authority, I would hold a claim seeking transfer between BOP locations such as Ahmad's is not cognizable in habeas. That does not necessarily mean Ahmad has no viable way to litigate his belief that BOP is acting unlawfully. *See Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (holding "an implied cause of action exists for Plaintiffs to challenge allegedly unconstitutional conditions of confinement"); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (noting federal court may "grant injunctive relief" preventing "violations of federal law by federal officials") (citation omitted). But for purposes of the present appeal, it is enough to conclude habeas was the wrong vehicle.