John J. CARDEN, a/k/a James J. Carden, and Gloria (Eusek) Carden, Petitioners-Appellees,

v.

STATE OF MONTANA, Respondent-Appellant.

No. 78–3095.

United States Court of Appeals, Ninth Circuit.

June 20, 1980.

Rehearing Denied Sept. 8, 1980.

Michael T. Greely, Atty. Gen., argued, Robert S. Keller, Asst. Atty. Gen., Helena, Mont., on brief, for respondent-appellant.

Wade J. Dahood, Anaconda, Mont., for petitioners-appellees.

Before GOODWIN and FARRIS, Circuit Judges and TAYLOR *, District Judge.

* The Honorable Fred M. Taylor, Senior District Judge for the District of Idaho, sitting by designation.

FARRIS, Circuit Judge:

The State of Montana is appealing from the district court's grant of appellees' pretrial petition for habeas corpus. The district court found that appellees John and Gloria Carden had been denied their constitutional right to a speedy trial and that habeas relief was proper because the Cardens had exhausted their state remedies. We reverse.

## I. FACTS

The Cardens were charged with crimes related to Gloria Carden's $5,000 worker's compensation award. The information was filed on December 20, 1974. Because of a lengthy procedural delay caused by the actions of both the prosecution and the defense, the Cardens moved for a dismissal alleging a violation of their constitutional right to a speedy trial.

A Montana State trial court granted the Cardens' motion but the Montana Supreme Court reversed. The Cardens then petitioned the United States District Court for habeas corpus relief. The district court ordered discovery and found as a fact that the State had disqualified a state trial judge for tactical purposes after he had been on the case for seven months. The district court concluded that the State bore the greater responsibility for the delay and that the delay had prejudiced the Cardens. Accordingly, the court held that, despite their own contribution to the delay, the Cardens' constitutional right to a speedy trial had been violated.

The State conceded at the district court hearing that the Cardens had exhausted their state avenues for asserting their speedy trial claim prior to trial. Relying on this concession, the district court concluded that pretrial federal habeas relief was not inconsistent with the established principles of comity and federalism which underlie the doctrine limiting federal interference with state proceedings.

The State is now challenging the issuance of the habeas writ on the ground that the district court, as a matter of comity, should not have entertained the Cardens' petition.

## II. DISCUSSION

■ The central issue is whether comity precluded the district court from intervening, prior to trial, in the State's criminal prosecution of the Cardens. The State concedes that the district court had jurisdiction, under 28 U.S.C. § 2241, to issue the pretrial writ of habeas corpus. As an exercise of judicial restraint, however, federal courts elect not to entertain habeas corpus challenges to state court proceedings until habeas petitioners have exhausted state avenues for raising federal claim.

■ Where a petitioner seeks pre-conviction habeas relief, this exhaustion prerequisite serves two purposes: (1) to avoid isolating state courts from federal constitutional issues by assuring those courts an ample opportunity to consider constitutional claims; and (2) to prevent federal interference with state adjudication, especially state criminal trials.[1] *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). The Court in *Braden* reaffirmed the established rule that federal adjudication of an affirmative defense prior to a state criminal trial violated the second of these two purposes and was thus prohibited by principles of comity unless the petitioner could show that "special circumstances" warranted federal intervention. *Id.* at 489, 93 S.Ct. at 1126.

Prior to *Braden*, we adhered to this rule as a logical implication of the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) which precludes federal injunctions of pending state criminal prosecutions absent "extraordinary circumstances." In *Drury v. Cox*, 457 F.2d 764, 764–65 (9th Cir. 1972), we stated that "only in the most

---

1. The Third Circuit described these two principles as "(1) the normal requirement that state appellate courts be given the initial opportunity to consider the federal constitutional claim; and (2) the teaching of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)" *Moore v. DeYoung*, 515 F.2d 437, 439 (3d Cir. 1975).

unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts."

■ The Cardens have not demonstrated the type of "special circumstances" which warrant federal intervention. The "special circumstances" exception to the general rule against pre-conviction federal intervention was discussed by the Supreme Court in a companion case to *Younger v. Harris*.

Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.

*Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1971).

The Cardens maintain that the prosecution harassed them by charging them with nineteen counts when only six were required. The state courts dismissed the unnecessary counts, and the Cardens are now seeking to avoid trial on those six counts found to have been properly charged. The district court concluded that charging the Cardens with too many counts was "unfair," but it did not accept their allegation that this constituted harassment. Under such circumstances, the filing of the multiplicious information does not warrant federal pretrial intervention.

The Cardens also argue that the State's use of the Montana judge disqualification statute for tactical purposes constitutes "special circumstances." The district court found that, by using the disqualification statute in this way, the State was responsible for "deliberate delay" which weighed heavily against the State in determining whether it had violated the Cardens' speedy trial right. This does not satisfy the requirement that the Cardens show that the State, by its use of the disqualification statute, prosecuted them in "bad faith without hope of . obtaining a valid conviction."

While the "deliberate delay" finding may bear on the merits of the Cardens' speedy trial claim, it does not determine the appropriateness of federal intervention.

■ Further, the Cardens have not shown how they will be irreparably injured by waiting until after trial to assert their speedy trial claim. We agree with the Third Circuit's conclusion in *Moore v. DeYoung*, 515 F.2d 437 (3d Cir. 1975) that, unlike the Double Jeopardy Clause, the Speedy Trial Clause, when raised as an affirmative defense, does not embody a right which is necessarily forfeited by delaying review until after trial. This conclusion is supported by *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) in which the Court held that a federal district court's denial of a pretrial speedy trial motion to dismiss was not appealable before trial because it lacked finality. Rather than requiring pretrial review, the court in *MacDonald* indicated that a speedy trial claim is best reviewed after trial when the district court's dismissal is more conclusive and allegations of prejudice are less speculative.

Because the Cardens have not demonstrated "special circumstances" warranting federal interference with Montana's criminal prosecution, we need not decide whether the state courts had sufficient opportunity to consider the speedy trial claim to satisfy the first purpose of the exhaustion doctrine identified in *Braden*. We note, however, that the Cardens make the unsupported assertion that "[t]here was no available procedure under the laws of the State of Montana by which the Cardens could raise the constitutional questions presented." Although the State does not rebut this contention, we are unconvinced in light of the *MacDonald* court's discussion of the nature of the speedy trial right, that the Montana state courts would refuse to reconsider their rejection of the Cardens' claim after the trial has demonstrated the extent to which the Cardens were prejudiced by the delay. Accordingly, the Cardens' appropriate remedy is to proceed to trial and thereafter

raise their speedy trial claim[2] if they wish to do so.

In reversing the district court's grant of habeas relief, we are neither rejecting the merits of the Cardens' Sixth Amendment claim nor totally denying them a federal forum to assert it. We hold that under the circumstances before us, federal interference with the state proceeding was premature and thus inconsistent with the dictates of our federal system.

Reversed.

---

2. Requiring the Cardens to stand trial before seeking a federal forum for their speedy trial claim is consistent with the position taken by the Second Circuit in *United States ex rel.* *Scranton v. State of New York*, 532 F.2d 292 (2d Cir. 1976).

