**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMMY L. PAGE, *Petitioner-Appellant*, | No. 17-16364 |
| v. | D.C. No. 1:16-cv-00522-AWI-JLT |
| AUDREY KING, *Respondent-Appellee.* | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted February 8, 2019
San Francisco, California

Filed August 2, 2019

Before: Richard A. Paez and Marsha S. Berzon, Circuit
Judges, and Gary Feinerman,[*] District Judge

Opinion by Judge Feinerman

---

[*] The Honorable Gary Feinerman, United States District Judge for
the Northern District of Illinois, sitting by designation.

# SUMMARY[**]

## Habeas Corpus / *Younger* Abstention

The panel vacated the district court's judgment dismissing based on *Younger* abstention a habeas corpus petition in which Sammy Page, who has been detained for thirteen years awaiting trial for recommitment under the California Sexually Violent Predator Act (SVPA), alleges that the State of California is violating his due process rights by continuing to detain him pretrial based on an outdated and scientifically invalid probable cause finding.

The panel rejected as irreconcilable with this court's precedents Page's contention that his SVPA case has been stalled for so long that it is no longer "ongoing" for purposes of *Younger v. Harris*, 401 U.S. 37 (1971). The panel explained that the state court proceeding is "plainly ongoing" for *Younger* purposes where, as here, no final judgment has been entered.

The panel held that the delay in bringing Page's SVPA case to trial is not an extraordinary circumstance under *Younger*, as the delay is primarily attributable to defense counsel's litigation efforts, not the state court's ineffectiveness.

The panel held that Page's claim fits squarely within the "irreparable harm" exception to *Younger* abstention set forth in *Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018),

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because (1) regardless of the outcome at trial, a post-trial adjudication will not fully vindicate his right to a current and proper pretrial probable cause determination, and (2) his claim, which could not be raised in defense of the criminal prosecution, could not prejudice the conduct of the trial on the merits.

The panel wrote that the merits of Page's due process claim are reserved for the district court on remand, and that the district court should consider anew Page's request for appointment of counsel.

## COUNSEL

Andrea Renee St. Julian (argued), San Diego, California, for Petitioner-Appellant.

Max Feinstat (argued), Deputy Attorney General; Tami M. Krenzin, Supervising Deputy Attorney General; Michael P. Farrell, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Respondent-Appellee.

## OPINION

FEINERMAN, District Judge:

Sammy Page, who has been detained for the last thirteen years awaiting trial for recommitment under the California Sexually Violent Predator Act ("SVPA"), Cal. Welf. & Inst. Code § 6600 *et seq.*, filed a petition for habeas corpus, alleging that the state is violating his Fourteenth Amendment due process rights by continuing to detain him pretrial based on an outdated and scientifically invalid probable cause finding. The district court dismissed the petition under *Younger v. Harris*, 401 U.S. 37 (1971). We vacate and remand for further proceedings. (Page raised three uncertified issues, which we decline to address. Ninth Cir. R. 22-1(e). If relevant on remand, Page may raise them in the district court.)

## Factual and Procedural History

### A. Page's State SVPA Proceedings

From 1971 to 1987, Page committed three brutal rapes during home invasion robberies. *See People v. Page*, 2005 WL 1492388, at *3–5 (Cal. Ct. App. June 24, 2005). In 2004, he was adjudicated a Sexually Violent Predator ("SVP") under the SVPA and civilly committed for two years. *Id.* at *1–3.

In February 2006, the state filed a petition to recommit Page as an SVP. The state supported its petition with two psychiatric evaluations diagnosing Page with Paraphilia Not Otherwise Specified ("NOS") based on his affinity for nonconsensual sex and concluding that he qualified as an SVP. In May 2006, the state court found probable cause to detain Page pretrial. Page has been detained awaiting trial

ever since.  The state court minute orders and the July 21, 2015 declaration of David C. Cook, an SVPA prosecutor, set forth the relevant timeline.  (Page argues that we should disregard the declaration because Cook cannot act as both witness and attorney in the same case.  *See* Cal. Rules of Professional Conduct 3.7 (2018).  This argument fails because Cook does not represent the state in this federal case.)

On March 16, 2006, a public defender was appointed to represent Page.  The case was continued until December 15, 2006 to permit the parties to prepare for trial.  On December 15, the state filed a motion based on a recent amendment to the SVPA.  The court granted the motion and continued the case to March 2, 2007.

The case was repeatedly delayed over the next two years. Defense counsel requested one continuance, but no explanation for the other continuances appears in the record. The case then was continued throughout 2009 to permit the parties to litigate defense motions, including Page's motion for substitute counsel.  On March 12, 2010, Cook "informed the court and Page's counsel that [the state] was ready for the case to be set for trial."  The case nonetheless was continued to May 2012 so that two additional defense motions could be briefed and decided.

One of the defense motions sought a new probable cause hearing, new mental health evaluations, and new mental health evaluators.  In a supporting declaration, Dr. Allen Francis opined that "Paraphilia NOS, nonconsent" is an "incompetent" and "psychiatrically unjustified" diagnosis upon which the psychiatric community had recently cast doubt, most notably by rejecting proposals to include it in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, or

"DSM-V." The court granted the motion for new evaluations and a new probable cause hearing, and continued the case to November 2012 to allow the new evaluations to take place.

Four mental health professionals were retained to perform the new evaluations. The first two evaluators disagreed as to whether Page met SVP criteria, necessitating two additional evaluators, who also disagreed. In the end, two evaluators, including one that had recommended recommitment in 2006, concluded that Page no longer met SVP criteria. They based their determinations in part on Page's lengthy pretrial detention, reasoning that he had aged and had not committed any further sexual or violent acts. The two other evaluators came to the opposite conclusion, finding that Page continued to meet SVP criteria. One of those evaluators diagnosed Page with Paraphilia NOS.

The case was continued from November 2012 to May 2013 so that defense motions related to the new evaluations could be filed, briefed, and decided. On July 26, 2013, the state requested a continuance to file a motion based on *Reilly v. Superior Court*, 304 P.3d 1071 (Cal. 2013), which called into question Page's entitlement to a new probable cause hearing. Defense counsel then sought several continuances to respond to the state's *Reilly* motion. The court granted the *Reilly* motion on April 18, 2014 and rescinded its prior order calling for a new probable cause determination.

The case was repeatedly continued until June 2, 2017 to allow defense counsel to litigate additional motions. The minute orders from July 28, 2017 through November 3, 2017 reference a "motion" but provide no further detail. The case was continued on January 5, 2018 "[b]y agreement of counsel" and again on May 4, 2018 for unknown reasons.

Cook averred in his declaration that he "remain[s] ready to set this matter for trial" and that, to his knowledge, "neither Page nor his trial counsel has ever requested that Page's case be set for trial." Cook further averred that he requested only one continuance after calling ready for trial on March 12, 2010.

## B.  Page's Federal Habeas Proceedings

Page filed the present federal habeas petition in the Northern District of California on July 16, 2012. He alleged that his due process rights were violated by the state court when it based its pretrial detention probable cause finding on pseudoscience; by the prosecution when it introduced pseudoscientific evidence at the probable cause hearing; and by the state when it continued to detain him based on the 2006 probable cause finding even though the 2012 evaluations suggested that the 2006 evaluations had become outdated. The district court abstained under *Younger v. Harris*, 401 U.S. 37 (1971). *See Page v. King*, 2015 WL 5569434 (N.D. Cal. Sept. 21, 2015). We vacated and remanded, instructing the district court to consider whether it had jurisdiction to decide the petition.

On remand, the district court transferred the case to the Eastern District of California, which again abstained under *Younger*, dismissed Page's petition, and declined to issue a certificate of appealability. *See Page v. California*, 2008 WL 3889563 (E.D. Cal. Aug. 19, 2008), *report and recommendation adopted*, 2009 WL 260704 (E.D. Cal. Feb. 4, 2009). Page appealed. We granted a certificate of appealability on the issue whether the district court properly abstained under *Younger*.

**Discussion**

Absent extraordinary circumstances, "interests of comity and federalism instruct [federal courts] to abstain from exercising our jurisdiction in certain circumstances when . . . asked to enjoin ongoing state enforcement proceedings." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017). "*Younger* abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (alterations and internal quotation marks omitted). But "even if *Younger* abstention is appropriate, federal courts do not invoke it if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Id.* at 765–66 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).

Page does not dispute that *Younger* abstention can apply to ongoing SVPA proceedings, but he offers two grounds for why the district court nevertheless erred in abstaining under *Younger* given the facts and circumstances of this case. We consider those grounds in turn.

## I. Whether Page's State SVPA Proceedings Are Ongoing

Page first contends that his SVPA case has been stalled for so long that it is no longer "ongoing" for purposes of *Younger*. This contention cannot be reconciled with our precedents, which establish that "[t]here is no principled

distinction between finality of judgments for purposes of appellate review and finality of state-initiated proceedings for purposes of *Younger* abstention." *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1093 (9th Cir. 2008). Where, as here, "no final judgment has been entered" in state court, the state court proceeding is "plainly ongoing" for purposes of *Younger*. *Id.* While recognizing the possibility that a state court could intentionally delay proceedings to stave off federal habeas review or for other improper purposes, we have determined that *Younger*'s exceptions for bad faith, harassment, or other extraordinary circumstances provide sufficient protection from such state court abuse. *Id.* We therefore turn to the question whether Page can establish one of those exceptions.

## II. Whether Extraordinary Circumstances Make *Younger* Abstention Inappropriate

Federal courts will not abstain under *Younger* in "extraordinary circumstances where irreparable injury can be shown." *Brown v. Ahern*, 676 F.3d 899, 903 (9th Cir. 2012). Page argues that this exception applies here, either because of the state court's extraordinary delay in bringing him to trial or because he will be irreparably harmed if he is unable to seek federal review prior to trial.

The delay in bringing Page's SVPA case to trial is not an extraordinary circumstance under *Younger*. True, we have in rare cases declined to abstain where the state court delay was extreme and there was "no end in sight" to the state court proceedings. *See Phillips v. Vasquez*, 56 F.3d 1030, 1035, 1038 (9th Cir. 1995) ("We have consistently recognized that unusual delay in the state courts may justify a decision to protect a prisoner's right to a fair and prompt resolution of his constitutional claims despite the jurisprudential concerns

that have led us to decline to review a claim or to require full exhaustion in other cases in which a proceeding related to the federal petition is pending in state court."). But *Younger* abstention is appropriate even in cases of extreme delay where there is "no indication that the state court has been ineffective," *Edelbacher v. Calderon*, 160 F.3d 582, 586 (9th Cir. 1998), and where the delay is instead "attributable to the petitioner's quite legitimate efforts in state court to escape guilt" through litigation, *id*. at 585.

As the Cook declaration and the state court record show, the delay in bringing Page's SVPA case to trial is primarily attributable to defense counsel's litigation efforts, not the state court's ineffectiveness. Additionally, an end to the state court proceedings is in sight. The state informed the court that it was ready for trial nine years ago and has remained ready at least as of 2015. Thus, it appears that Page could go to trial if he only demanded it.

Page's reliance on speedy trial cases like *Doggett v. United States*, 505 U.S. 647, 652 (1992), which describes an eight-and-a-half-year delay as "extraordinary," is misplaced. Page does not explain how or why speedy trial principles apply to the very different question of what constitutes extraordinary circumstances under *Younger*. Moreover, we have repeatedly rejected the argument that "violation of the Speedy Trial Clause [is] *sui generis* such that it suffice[s] in and of itself as an independent 'extraordinary circumstance' necessitating pre-trial habeas consideration." *Brown*, 676 F.3d at 901 (quoting *Carden v Montana*, 626 F.2d 82, 84 (9th Cir. 1980)). Thus, even if Page could establish that the delay in bringing him to trial would support a speedy trial defense if the state court proceedings were criminal in nature, it does not follow that the delay is an extraordinary circumstance in the meaning of *Younger*.

Page argues in the alternative that abstention is inappropriate for the reasons given in *Arevalo v. Hennessy*, *supra*, which we decided after the district court here issued its ruling. In that case, Erick Arevalo filed a federal habeas petition alleging that he had been jailed for six months without a constitutionally adequate bail hearing. *Arevalo*, 882 F.3d at 764–65. We held that *Younger* does not "require[ ] a district court to abstain from hearing a petition for a writ of habeas corpus challenging the conditions of pretrial detention in state court" where (1) the procedure challenged in the petition is distinct from the underlying criminal prosecution and the challenge would not interfere with the prosecution, or (2) full vindication of the petitioner's pretrial rights requires intervention before trial. *Id*. at 764, 766–67. We determined that Arevalo's claims satisfied both grounds for overcoming *Younger* abstention.

As to the first, we relied on *Gerstein v. Pugh*, 420 U.S. 103 (1975), which held that a criminal defendant's right to "a judicial determination of probable cause for pretrial restraint of liberty" can be enforced in federal court before state court proceedings conclude. *Id*. at 105, 108 n.9. *Gerstein* reasoned that because claims regarding the right to a probable cause determination are not "directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution," federal court review "could not prejudice the conduct of the trial on the merits." *Id*. at 108 n.9. Applying *Gerstein*, we concluded that Arevalo's bail-related federal habeas claims were "distinct from the underlying criminal prosecution and would not interfere with it." *Arevalo*, 882 F.3d at 766.

As to the second ground for overcoming *Younger* abstention in *Arevalo*, we relied on *Mannes v. Gillespie*,

967 F.2d 1310 (9th Cir. 1992), which declined to abstain from hearing a habeas petitioner's double jeopardy claim on the ground that "[t]he Fifth Amendment's protection against double jeopardy … is not against being twice punished, but against being twice put in jeopardy," that is, against facing two trials.  967 F.2d at 1312 (internal quotation marks omitted).  Given the nature of the double jeopardy right, we reasoned in *Mannes* that a *post*-trial ruling that the state violated the Double Jeopardy Clause would come too late, as the petitioner already would have been irreparably deprived of his rights.  *Id.*  Likewise, the bail hearing that Arevalo sought was intended to protect him against unconstitutional pretrial detention, a right that could not be vindicated post-trial.  *Arevalo*, 882 F.3d at 767.  We therefore held that Arevalo had established extraordinary circumstances that threatened irreparable harm and justified proceeding with his habeas petition.  *Id.*

Here, Page alleges that the state is violating his due process right not to be detained pretrial based on a stale and scientifically invalid probable cause determination and that his complete loss of liberty for the time of pretrial detention is "irretrievable" regardless of the outcome at trial.  If Page is right, then regardless of the outcome at trial, a post-trial adjudication of his claim will not fully vindicate his right to a current and proper pretrial probable cause determination.  His claim therefore "fits squarely within the irreparable harm exception" to *Younger* that we applied in *Arevalo*.  *Id*. at 766.

Additionally, as in *Arevalo*, Page's claim is closely analogous to the claim in *Gerstein*: The defendant in *Gerstein* challenged the state's refusal to hold a probable cause hearing, while Page challenges the state's alleged failure to hold a *constitutionally adequate* probable cause hearing.  Page's claim likewise is not "directed at the state

prosecution[ ] as such, but only at the legality of pretrial detention without a [constitutionally-adequate] judicial hearing, an issue that could not be raised in defense of the criminal prosecution," and thus our review "could not prejudice the conduct of the trial on the merits." 420 U.S. at 108 n.9. Page's claim therefore satisfies both of the grounds set forth in *Arevalo* for overcoming *Younger* abstention.

The state argues that *Arevalo* is inapposite because Page failed to show that he was unable to raise his due process claim in the state court proceedings. We considered and rejected the same argument in *Arevalo*, and are bound to follow suit here. 882 F.3d at 767 n.3 (noting that the opportunity to present a claim in state court "involve[s] the third *Younger* factor—adequacy of the state proceedings to address the issue," and does not categorically bar the "irreparable harm" exception).

Nor is our treatment of Page's claim inconsistent with our speedy trial jurisprudence. True, we have declined to apply the irreparable harm exception to *Younger* abstention where a federal habeas petitioner seeks to vindicate a speedy trial affirmative defense. *See Carden*, 626 F.2d at 84; *see also Brown*, 676 F.3d at 901 (reaffirming *Carden*). But unlike the protection against double jeopardy or the pretrial rights at issue in *Arevalo* and *Gerstein*, the speedy trial defense primarily protects the integrity of the trial itself. *See United States v. MacDonald*, 435 U.S. 850, 858 (1978) (holding that the "most serious" interest that "the speedy trial right was designed to protect" is "to limit the possibility that the defense will be impaired"); *Carden*, 626 F.2d at 84 (citing *MacDonald* to support its holding that *Younger* abstention was appropriate). Like other rights designed to ensure a fair trial, the speedy trial right asserted as a defense

can be vindicated through reversal of the improperly-obtained conviction. *See Carden*, 626 F.2d at 84; *Brown*, 676 F.3d at 901. By contrast, the right asserted by Page implicates the integrity of *pretrial* probable cause procedures. *Arevalo* shows that such a right is not a trial right and therefore cannot be vindicated post-trial.

Finally, we recognize that in *Drury v. Cox*, 457 F.2d 764 (9th Cir. 1972) (per curiam), we abstained under *Younger* from hearing a challenge to a pretrial probable cause determination. Our two-paragraph, per curiam opinion in *Drury* did not consider or decide whether the petitioner's claim fell within the irreparable harm exception to *Younger*, so it does not govern that issue. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 n.5 (1992) ("It is contrary to all traditions of our jurisprudence to consider the law on this point conclusively resolved by broad language in cases … where the issue was not presented or even envisioned."). Additionally, we issued *Drury* prior to the Supreme Court's decision in *Gerstein*, which, as noted, expressly held that *Younger* abstention was not appropriate where the petitioner claims that the state has not provided appropriate pretrial probable cause procedures. To the extent that *Drury* stands for the opposite proposition, it has been overruled. *See Miranda v. Selig*, 860 F.3d 1237, 1243 (9th Cir. 2017) ("[W]e are bound by decisions of prior panels[ ] unless [a] … Supreme Court decision … undermines those decisions."); *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) ("[I]ssues decided by the [Supreme] [C]ourt need not be identical in order to be controlling. Rather, the [Court] must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.").

We therefore hold that the district court erred in abstaining under *Younger* from hearing Page's claim that the state is violating his pretrial due process rights.  In so holding, we do not speak to the merits of Page's due process claim.  Indeed, the Supreme Court's recent opinion in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017)—which held that "[i]f the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment," not the Due Process Clause, *id.* at 919—may doom Page's petition unless he is permitted to amend to allege a Fourth Amendment violation.  Those merits questions are reserved for the district court on remand.

Before concluding, we note that Page requests that, in the event of a remand, we direct the district court to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B).  The district court denied his requests for appointed counsel because it found that the interests of justice did not require appointment of counsel at the time.  On remand, given the complexity of the issues involved in his petition, the district court should consider anew Page's request for appointment of counsel.  *See* 18 U.S.C. § 3006A(A)(2)(B).

**VACATED and REMANDED.**