**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CREDIT ONE BANK, N.A., *Plaintiff-Appellant,* | No. 21-56271 |
| v. | D.C. No. 5:20-cv-02156-JGB-KK |
| MICHAEL A. HESTRIN, District Attorney of Riverside County, California, *Defendant-Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted November 9, 2022
Pasadena, California

Filed February 27, 2023

Before: Mary H. Murguia, Chief Judge, and Barrington D.
Parker,[*] and Kenneth K. Lee, Circuit Judges.

Opinion by Judge Parker

---

[*] The Honorable Barrington D. Parker, Jr., United States Circuit Judge
for the U.S. Court of Appeals for the Second Circuit, sitting by
designation.

## SUMMARY[**]

### Abstention / National Bank Act

The panel affirmed the district court's dismissal, based on *Younger* abstention, of Credit One Bank's action alleging that Riverside County District Attorney Michael A. Hestrin violated the National Bank Act by suing Credit One in state court for allegedly employing a vendor to make harassing debt collection phone calls.

Credit One sought an injunction against the state court action on the ground that it was an unlawful exercise of "visitorial powers," which the National Bank Act and its associated regulations grant exclusively to the Office of the Comptroller of the Currency.

The panel held that the district court correctly abstained under *Younger v. Harris*, 401 U.S. 37 (1971), because all four *Younger* factors were met. First, the state action qualified as an "ongoing" judicial proceeding because no proceedings of substance on the merits had taken place in the federal action. Second, the state court action implicated the important state interest of protecting consumers from predatory business practices, and federal law did not bar Hestrin from bringing the state court action. The panel held that the state court action, which was an enforcement action against a national bank under non-preempted state law, was not an exercise of "visitorial powers," and nothing in federal law prevents a district attorney from vindicating a state interest in consumer protection by suing a national

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

bank. Third, Credit One had the ability to raise a federal defense under the National Bank Act in the state court action. And fourth, the injunction Credit One sought would interfere with the state court proceeding.

## COUNSEL

Christopher N. Bellows (argued), Holland & Knight LLP, Miami, Florida; Abraham J. Colman, Raymond Y. Kim, and Stacey H. Wang, Holland & Knight LLP, Los Angeles, California; Laurie W. Daniel, Holland & Knight LLP, Atlanta, Georgia; for Plaintiff-Appellant.

Harold R. Anderson (argued), Deputy District Attorney; Timothy S. Brown, Trial Attorney; Michael A. Hestrin, District Attorney, Riverside County; Riverside County District Attorney's Office; Riverside, California; for Defendant-Appellee.

Rachel A. Foodman, Deputy Attorney General; Michele Van Gelderen, Supervising Deputy Attorney General; Nicklas A. Akers, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General; Oakland, California; for Amicus Curiae State of California.

# OPINION

PARKER, Circuit Judge:

In March 2021, Riverside County, California District Attorney Michael A. Hestrin sued Credit One Bank in Riverside County Superior Court. The lawsuit (the "state action") alleged that Credit One, a national bank, violated California law by employing a vendor to make extensive harassing debt collection phone calls to California residents. In a related federal case (the "federal action"), Credit One requested that the United States District Court for the Central District of California enjoin the state action on the ground that it was an unlawful exercise of "visitorial powers," which the National Bank Act ("NBA") and its associated regulations grant exclusively to the Office of the Comptroller of the Currency ("OCC"). 12 U.S.C. § 484(a); 12 CFR § 7.4000(a)(1).[1] The district court ultimately decided to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), in favor of the state action and dismissed the federal action. Credit One appeals that dismissal.

We affirm. We hold that the district court was correct to abstain, that the state action was not an exercise of visitorial powers, and that nothing in the NBA prevents district

---

[1] Visitation is the power of a sovereign to inspect, supervise, and control a corporation at will, for example by inspecting the corporations' books and records. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 525–29 (2009). The Supreme Court has defined visitation as "the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and enforce an observance of its laws and regulations." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 14 (2007) (quoting *Guthrie v. Harkness*, 199 U.S. 148, 158 (1905)).

attorneys from suing national banks under non-preempted state laws.

I.

This case has a tortuous history in state and federal court. It commenced in January 2019 when Hestrin began investigating a third-party vendor of Credit One for violations of California law. Hestrin believed that the vendor made harassing phone calls to California residents in an attempt to collect debts allegedly owed to Credit One. Hestrin eventually alleged that tens of thousands of consumers received millions of improper automated debt collection phone calls and that many of them were directed to individuals having no relationship whatsoever to Credit One. In connection with this investigation, Hestrin served Credit One with an investigative subpoena seeking records of its banking activities. Credit One formally objected to the subpoena on several grounds, including that it "improperly infringes on the exclusive visitorial powers of the Office of the Comptroller of the Currency" because it sought to inspect Credit One's books and records. Hestrin then petitioned the state Riverside County Superior Court to enforce the subpoena (the "investigative subpoena enforcement action").

Credit One then filed the federal action in the Central District of California seeking a declaratory judgment that the investigative subpoena was unenforceable as an improper exercise of visitorial powers. Credit One also sought, in the federal action, injunctive relief broadly forbidding Hestrin from taking any action to enforce federal and state lending, debt collection, and consumer laws against Credit One, or otherwise exercising visitorial powers in violation of Section

484 of the National Bank Act. This opinion addresses Credit One's ultimate appeal in the federal action.

Shortly after filing the federal action, Credit One successfully moved in state court to stay the investigative subpoena enforcement action. With the investigative subpoena enforcement action stayed, Hestrin elected to withdraw the investigative subpoena, conceding that it was an improper exercise of visitorial powers. Hestrin then moved to dismiss the federal action for lack of subject matter jurisdiction and on the ground that it was moot because he had withdrawn the investigative subpoena. The district court denied the motion. The court held that it had jurisdiction and that the case was not moot because Hestrin had not demonstrated that a "renewed investigative subpoena against Plaintiff 'could not be reasonably be expected.'"

Hestrin then filed the state action against Credit One in Riverside County Superior Court. The state action alleged violations of California's Unfair Competition Law, the Rosenthal Fair Debt Collections Practices Act, and the right to privacy of the California Constitution.

After the state action was filed, the federal action continued and Credit One sought an injunction in the federal action that would enjoin both the investigative subpoena enforcement action and the later-filed state action. In the federal action, the parties filed a joint scheduling report and discovery plan in which they agreed that no discovery was necessary because the dispute turned on differing interpretations of federal law and that the appropriate approach for resolution of the case would be for Credit One to move for summary judgment. Credit One, however, delayed for several months in filing its summary judgment motion.

In the interim, Credit One removed the state action to federal court, but the court remanded it. *California v. Credit One Bank, N.A.*, No. EDCV 21-872 JGB (KKx), 2021 WL 3130045 (C.D. Cal. July 23, 2021). Two months after the state action was remanded to California state court, Hestrin moved to dismiss the federal action based on *Younger* abstention. Two days after Hestrin filed his motion, Credit One filed its motion for summary judgment in the federal action, arguing that Hestrin's state action was an improper exercise of visitorial powers over Credit One and that the district court should therefore enjoin Hestrin from attempting to enforce state consumer protection laws against Credit One.[2] The district court concluded that the requirements for *Younger* abstention had been satisfied, dismissed the federal action and denied Credit One's motion for summary judgment as moot.

This appeal followed.

## II.

We consider essentially two questions: whether *Younger* abstention was correct and whether Hestrin's state court suit was an impermissible exercise of visitorial powers vested exclusively with the OCC. A district court's *Younger* abstention determination is reviewed de novo. *Bean v. Matteucci*, 986 F.3d 1128, 1132 (9th Cir. 2021). In *Younger*, the Supreme Court held that federal courts should abstain from staying or enjoining pending state criminal

---

[2] Shortly after Hestrin's *Younger* motion was filed, on September 22, 2021, the Riverside County Superior Court dismissed the investigative subpoena enforcement action with prejudice at Hestrin's request because the subpoena had been withdrawn on November 20, 2020.

prosecutions absent extraordinary circumstances. 401 U.S. at 45. *Younger* abstention has been expanded to also cover civil enforcement actions and is appropriate when "(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Matteucci*, 986 F.3d at 1133 (quoting *Page v. King*, 932 F.3d 898, 901–02 (9th Cir. 2019)).

The district court concluded that all four *Younger* factors were met. *Credit One Bank, N.A. v. Hestrin*, No. EDCV 20-2156 JGB (KKx), 2021 WL 6496856 (C.D. Cal. Nov. 5, 2021). First, it found that the state action qualified as an "ongoing" judicial proceeding because no proceedings of substance on the merits had taken place in the federal action. *Id.* at *2–*3. The district court concluded that its denial of the earlier motion to dismiss "only addressed jurisdictional issues" and that it had not spent a significant amount of time evaluating the merits of the case. *Id.* at *3. Second, it found that the state action implicated the important state interest of protecting consumers and that the presence of federal issues did not trump the state's interest. *Id.* at *3–*4. Third, the district court found that Credit One had the ability to raise federal defenses in the state action and, finally, the district court concluded that because Credit One sought to enjoin the state action, the injunction it sought would interfere with the state proceeding. *Id.*

On appeal, Credit One admits that the third element is satisfied because it could raise constitutional defenses in state court but challenges the district court's conclusions on the three remaining elements. As to the first element, although Credit One admits that the state action was a

qualifying "state judicial proceeding," it challenges the district court's conclusion that the state action was "ongoing" at the relevant time. Next, Credit One argues that that the fourth element is not satisfied because the relief it seeks would not interfere with the state proceeding. Finally, Credit One argues that because the NBA and its implementing regulations forbid Hestrin from bringing the state action, no important state interest can be implicated and therefore the second element is not satisfied. We reject these arguments.

## A.

Credit One's argument on the first *Younger* factor fails because the state action was "ongoing" before the federal action proceeded beyond the embryonic stage. State proceedings are "ongoing" for the purposes of *Younger* abstention if "they are initiated 'before any proceedings of substance on the merits have taken place in the federal court.' Put another way, 'the commencement of state proceedings only ceases to require federal abstention after the federal court proceedings have moved beyond an embryonic stage.'" *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017) (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) and *Hoye v. City of Oakland*, 653 F.3d 835, 844 (9th Cir. 2011)) (cleaned up). The district court correctly concluded that the federal action had not moved beyond the embryonic stage.

There are two bright line rules for evaluating whether proceedings of substance on the merits have taken place and a case has thus advanced beyond the embryonic stage. First, the denial of a temporary restraining order is never a proceeding of substance on the merits and, second, the grant of a preliminary injunction is always a proceeding of

substance on the merits. *Nationwide*, 873 F.3d at 728. Where, as here, neither of these events have occurred, "we must conduct a fact-specific assessment of the circumstances" of the case, recognizing that the relevant inquiry "is the extent of the district court's involvement in the merits." *Id.* Relevant factors include the number of conferences held, if discovery was undertaken, any motions ruled on, and the overall amount of time that the district court spent on the case. *Id.* at 728–29.

When the state action was filed, the docket in the federal action contained 25 entries. Nearly all of them were the routine preliminary entries present in any federal case: the complaint, notice of assignment, proof of service, answer, and *pro hac vice* applications and the like. The only motion filed was Hestrin's initial motion to dismiss for lack of subject matter jurisdiction. After briefing, the court concluded that it had jurisdiction and denied the motion. The only filings made in the federal action between the denial of the motion to dismiss and the filing of the state action in Riverside County Superior Court were Hestrin's answer, and an order setting a scheduling conference. Thus, at the time that Hestrin filed his *Younger* motion, the only significant proceeding that had occurred in the federal action was the denial of Hestrin's motion to dismiss for lack of jurisdiction.

Credit One does not argue that any discovery was taken or that the district court held a significant number of conferences. Instead, citing *Nationwide*, Credit One argues that the denial of a motion to dismiss is a proceeding of substance on the merits that occurred before the state action was filed and which therefore makes *Younger* abstention inappropriate. The denial of a motion to dismiss, however, is not invariably a proceeding of substance on the merits. In *Nationwide*, we concluded that the federal action had moved

beyond the embryonic stage not merely because a motion to dismiss had been denied but because, before the state action was filed, "the district court spent a substantial amount of time evaluating the merits of the cases in considering and denying (in a detailed and reasoned order) Nationwide's motions for preliminary injunctions." *Nationwide*, 873 F.3d at 729. We noted that the district court had dedicated twenty-one pages of its preliminary injunction opinions to the merits and that the "submissions included more than 100 pages of briefing and more than 250 pages of declarations, affidavits, and exhibits in support of the motions." *Id*. We also contrasted the district court's extensive consideration of the merits with a hypothetical scenario in which the district court had denied "the motions on a non-merits ground—such as ripeness, standing, or one of the non-merits . . . factors."[3] *Id.*

Here, in contrast, the district court denied the motion to dismiss for lack of subject matter jurisdiction in a five-page order after the court considered briefing that included no declarations or affidavits, and only four exhibits—a minimal record, in contrast to the one in *Nationwide*. More important than size of the record is the fact that the opinion focused almost entirely on non-merits grounds. Hestrin's motion argued for dismissal under Rule 12(b)(1) and the majority of the "discussion" section of the district court's opinion was on non-merits grounds: standing, collateral estoppel, and the jurisdictional aspects of the Declaratory Judgment Act.

---

[3] In addition, the district court in *Nationwide* evaluated the merits of the case as part of a Rule 12(b)(6) motion to dismiss. *Nationwide*, 873 F.3d at 729 ("The motion to dismiss raised issues relating to the merits: namely whether Nationwide had raised cognizable claims under the Commerce Clause, substantive due process, equal protection, or the doctrine of vagueness."). Here, Hestrin's Rule 12(b)(1) motion did not address merits issues.

These factors indicate to us that the denial of Hestrin's motion to dismiss for lack of jurisdiction was not a proceeding of substance of the merits and therefore the federal action had not progressed past the embryonic stage.

Credit One argues that the district court did reach the merits in denying the motion to dismiss because the sole issue in this case is whether the NBA and OCC regulations forbid Hestrin from bringing the state action against Credit One and that this core merits issue "was fully briefed and initially addressed in Credit One's favor." This argument, however, exaggerates what occurred. The entirety of the district court's discussion of the merits on Hestrin's motion to dismiss is as follows:

> [D]espite Plaintiff's repeated challenge to a district attorney's power to take enforcement actions against national banks (see, e.g., Compl. ¶ 12 ("[S]tates may enforce nonpreempted state law against a national bank only where the state actor bringing the action is the attorney general. . . .")), Defendant fails to support his assertion that the <u>Cuomo</u> and Dodd-Frank exception for attorney generals [*sic*] or "chief law enforcement officers" encompasses district attorneys at the county level. Absent any such support, the Court will not foreclose Plaintiff's claim that Defendant's enforcement actions may usurp the OCC's exclusive visitorial powers.

This short summary is nothing like the lengthy discussions of the merits in *Nationwide*.

We therefore conclude that the district court's denial of Hestrin's motion to dismiss did not advance the case beyond an embryonic stage and that no substantial proceedings on the merits had taken place in the federal action before the court granted Hestrin's *Younger* motion. The district court's finding that the state action was "ongoing" for *Younger* purposes was therefore correct and we conclude that the first *Younger* element is met.

## B.

With regard to the fourth *Younger* factor, Credit One argues that the federal injunction it seeks will not have the effect of enjoining an ongoing state judicial proceeding because if Hestrin is enjoined, the California Attorney General can still sue. We are not persuaded. This *Younger* abstention requirement is not concerned with the identity of the plaintiff but whether "the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Matteucci*, 986 F.3d at 1133. Credit One requested that the district court enjoin Hestrin from taking any action to enforce federal and state lending, debt collection, and consumer laws regarding Credit One's credit card lending operations. The district court concluded that if it "grants the requested relief, then it would enjoin the District Attorney's current enforcement action against Credit One. . . . Accordingly, the Court concludes that the federal action will interfere with the state proceeding." This conclusion was correct. If the district court had granted Credit One's requested relief, it would have enjoined the state proceeding. Our analysis ends there. The fact that the Attorney General could bring suit even if the suit brought by the District Attorney were enjoined is irrelevant.

C.

Turning to the final *Younger* element—whether an "important state interest" was involved in the state action—we conclude that because federal law does not bar Hestrin from bringing the lawsuit and because he sought to enforce state laws that protect consumers from predatory business practices, an important state interest was present.

In assessing that interest, we "do not look narrowly to its interest in the *outcome* of the particular case" but rather look to "the importance of the generic proceedings to the State." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989) (emphasis in original). The law is clear that "[p]roceedings necessary for the vindication of important state policies . . . evidence the state's substantial interest in the litigation." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). We have been clear that "[w]here the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied." *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 883–84 (9th Cir. 2011); *see also Fresh Intel Corp. v. Agric. Labor Rels. Bd.*, 805 F.2d 1353, 1360 n.8 (9th Cir. 1986) ("The state's interest in a civil proceeding is readily apparent when the state through one of its agencies acts essentially as a prosecutor."). Here, Hestrin, is acting undoubtedly in an "enforcement posture," attempting to enforce California's consumer protection laws against Credit One.

Credit One, however, argues that federal law forbids Hestrin from acting in an "enforcement posture" in relation to Credit One because bringing the state action is an exercise of visitorial powers that are granted exclusively to the OCC.

The NBA, first enacted in 1864 to provide for the federal regulation of national banks, sets forth that "[n]o national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized." 12 U.S.C. § 484(a). An OCC regulation, 12 C.F.R. § 7.4000, first promulgated in 1996, vests all visitorial powers in relation to national banks in the OCC and states that "State officials may not exercise visitorial powers with respect to national banks, such as conducting examinations, inspecting or requiring the production of books or records of national banks, or *prosecuting enforcement actions*, except in limited circumstances authorized by federal law." 12 C.F.R. § 7.4000(a)(1) (emphasis added). The regulation then defines "visitorial powers" with more specificity. It states that "visitorial powers include:

> (i) Examination of a bank; (ii) Inspection of a bank's books and records; (iii) Regulation and supervision of activities authorized or permitted pursuant to federal banking law; and (iv) Enforcing compliance with any applicable Federal or state laws concerning those activities, including through investigations that seek to ascertain compliance through production of non-public information by the bank, except as otherwise provided in paragraphs (a), (b), and (c) of this section.

12 C.F.R. § 7.4000(a)(2).

Credit One argues that because Hestrin's suit is an exercise of visitorial powers, the threshold issue as to his authority to prosecute the state action is one of federal law and because federal law is paramount, there can be no important state interest in the litigation. This argument has no merit.

### 1.

Credit One's argument that the state action is an exercise of "visitorial powers" is foreclosed by the Supreme Court's decision in *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519 (2009). There*,* the Supreme Court held that bringing a civil lawsuit to enforce a non-preempted state law is not an exercise of visitorial powers. In *Cuomo*, the New York Attorney General sent letters "in lieu of a subpoena" seeking information from several national banks. *Cuomo*, 557 U.S. at 523. A bank association sued and won an injunction pursuant to 12 C.F.R. § 7.4000 that enjoined the Attorney General "from enforcing state fair-lending laws through demands for records *or judicial proceedings*." *Id.* (emphasis added). The injunction was upheld by the Court of Appeals. The Supreme Court reversed in part, holding that the injunction "is affirmed as applied to the threatened issuance of executive subpoenas by the Attorney General . . . but vacated insofar as it prohibits the Attorney General from bringing judicial enforcement actions." *Id.* at 536. The distinction between these two different powers is at the heart of the visitation issue.

After examining the history of visitation, the Court found that at the time of the NBA's passage, visitation was understood as a sovereign power of general supervision over a corporation's affairs, which allowed states to use prerogative writs, rather than ordinary litigation, to exercise

control over corporations. *Id.* at 526. Next, the Court found that an unbroken line of opinions had held that the visitorial power is distinct from "the power to enforce the law." *Id.* at 526–29. The Court concluded that "the unmistakable and utterly consistent teaching of our jurisprudence, both before and after enactment of the National Bank Act, is that a sovereign's 'visitorial powers' and its power to enforce the law are two different things. There is not a credible argument to the contrary." *Id.* at 529.

The Court then further clarified as to why it was incorrect for 12 C.F.R. § 7.4000 to define "prosecuting enforcement actions" against national banks as an exercise of visitorial powers. First, the Court observed that pursuing a lawsuit in court is far more restrictive than the largely unregulated power of visitation. In a lawsuit, the state proceeds under the court's supervision, "will be treated like a litigant," and "must file a lawsuit, survive a motion to dismiss, endure the rules of procedure and discovery, and risk sanctions if his claim is frivolous or his discovery tactics abusive." *Id.* at 531.

Bringing these points together, the Court concluded that the OCC regulation did not comport with the NBA and held,

> When . . . a state attorney general brings suit to enforce state law against a national bank, he is not acting in the role of sovereign-as-supervisor, but rather in the role of sovereign-as-law-enforcer. Such a lawsuit is not an exercise of "visitorial powers" and thus the Comptroller erred by extending the definition of "visitorial powers" to include "prosecuting enforcement actions" in state courts, § 7.4000.

*Id.* at 536. For these reasons, *Cuomo* controls. Prosecuting an enforcement action against a national bank under non-preempted state law is not an exercise of visitorial power.

An additional provision in the regulation reinforces our conclusion that state lawsuits, to enforce non-preempted state law, are not an exercise of visitorial powers. The regulation includes several exceptions to the OCC's exclusive visitorial powers, one of which provides: "Exception for courts of justice. National banks are subject to such visitorial powers as are vested in the courts of justice. This exception pertains to the powers inherent in the judiciary." 12 C.F.R. § 7.4000(c)(2).[4] As the Court in

---

[4] In a notice of proposed rulemaking, the OCC explained that the purpose of the exception for the courts of justice was to clarify that some inherent powers of courts, such as the power to compel a party to produce documents, are not granted exclusively to the OCC by the NBA even though they seem visitorial in nature. Rules, Policies, and Procedures for Corporate Activities; Bank Activities and Operations; Real Estate Lending and Appraisals, 68 Fed. Reg. 6363-01, 6369 (Feb. 7, 2003) ("Courts must be able to compel a national bank to produce books and records in connection with private litigation involving the bank. However, one might argue that the issuance of a subpoena by a court would itself be a 'visitation,' even if the underlying litigation was not. Such a reading would effectively immunize national banks from civil litigation, a result that Congress clearly did not intend.") The OCC thus stated in its final rule that the exception "grants no new authority and thus does not authorize states to bring suits or enforcement actions that *they do not otherwise have the power to bring*." Bank Activities and Operations, 69 Fed. Reg. 1895-01, 1900 (Jan. 13, 2004) (emphasis added). Thus, the regulation clearly contemplates that states may bring civil actions against national banks and that the act of bringing suit is not itself an exercise of visitorial powers. The exception makes clear that actions which are within the inherent powers of the court, such as compelling a defendant bank to produce documents, are not visitorial powers.

*Cuomo* concluded, this exception is "explicable only as an attempt to make clear that the courts' ordinary powers of enforcing the law are not affected." 557 U.S. at 530. This constellation of provisions makes clear that a lawsuit such as Hestrin's seeking to enforce California's consumer protection laws in state court is not an exercise of visitorial powers.

Following *Cuomo*, Congress amended the NBA to conform the statute to the decision. In 2010, it enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010. Dodd-Frank's amendment to the NBA, codified as 12 U.S.C. § 25b(i) provides that,

> In accordance with the decision of the Supreme Court of the United States in *Cuomo v. Clearing House Assn., L. L. C.* (129 S. Ct. 2710 (2009)), no provision of title 62 of the Revised Statutes which relates to visitorial powers or otherwise limits or restricts the visitorial authority to which any national bank is subject shall be construed as limiting or restricting the authority of any attorney general (or other chief law enforcement officer) of any State to bring an action against a national bank in a court of appropriate jurisdiction to enforce an applicable law and to seek relief as authorized by such law.

12 U.S.C. § 25b(i).

Following the enactment of Dodd-Frank*,* the OCC amended its regulation relating to visitation, 12 C.F.R. § 7.4000, to align it with the Supreme Court's decision and with Dodd-Frank.**[5]** The amendment provides that "In accordance with the decision of the Supreme Court in *Cuomo* . . . an action against a national bank in a court of appropriate jurisdiction brought by a state attorney general (or other chief law enforcement officer) to enforce an applicable law against a national bank and to seek relief as authorized by such law is not an exercise of visitorial powers under 12 U.S.C. 484." 12 C.F.R. § 7.4000(b).

2.

Credit One concedes nearly all of this conclusion, except that it contends that under 12 U.S.C. § 25b(i), only a state Attorney General, and not county District Attorneys may sue. Specifically, Credit One argues that § 25b(i) and its related regulations give state attorneys general the exclusive power to bring lawsuits and therefore bar district attorneys from enforcing state law against national banks.

In making this argument, Credit One misreads § 25b(i). The Section states that "*no provision* of title 62 of the Revised Statutes . . . shall be construed as *limiting or restricting* the authority of any attorney general . . . of any State to bring an action against a national bank in a court of appropriate jurisdiction." 12 U.S.C. 25b(i) (emphasis added). The statute, as we have seen, codifies *Cuomo* which

---

[5] The OCC, however, made no other changes to 12 C.F.R. § 7.4000 after *Cuomo* and the text of the regulation still erroneously includes "prosecuting enforcement actions" as an example of a visitorial power that state officials may not exercise, even though that phrase was excised by *Cuomo*. 12 C.F.R. § 7.4000(a)(1).

held that suits by attorneys general against national banks were not exercises of visitorial powers. *Cuomo*'s fundamental holding is that civil lawsuits are, and always have been, distinct from the exercise of visitorial powers. The logic of the opinion rests on the basic principle of state sovereignty—the Court stated repeatedly that law enforcement is a state sovereign responsibility. While *Cuomo* happened to involve an attorney general, its reasoning and holding apply with full force to district attorneys. *Cuomo* makes clear that it is the character of the action, rather than which official carries it out, that determines whether an action is an exercise of visitorial powers. Credit One offers no principled argument that *Cuomo* would have been decided differently if it involved a district attorney rather than an attorney general.

We conclude that the Dodd-Frank amendment merely aligned the NBA with *Cuomo* by specifically clarifying that nothing in the NBA restricts the ability of attorneys general to sue national banks. Considering the context in which it was passed, and the statutory text chosen by Congress, it is highly unlikely—indeed inconceivable—that Congress intended that suits by anyone other than an attorney general would constitute an exercise of visitorial powers.

Instead of focusing on *Cuomo* or 12 U.S.C. § 25b(i), Credit One focuses on the OCC regulation, 12 C.F.R. § 7.4000(b), which states "an action against a national bank in a court of appropriate jurisdiction brought by a state attorney general . . . is not an exercise of visitorial powers under 12 U.S.C. 484." Credit One argues that by specifically naming the attorney general, the regulation implies that a lawsuit brought by anyone else, including a district attorney, is an exercise of visitorial powers. We are not persuaded. An agency's regulation cannot trump the Supreme Court or

Congress and, in any event, Credit One's interpretation of the regulation is wrong for the same reasons as its interpretation of § 25b(i). Moreover, nowhere in the regulation itself, nor in the explanation of the rule published in the Federal Register, is there any indication that the power to bring civil suits against banks is limited solely to attorneys general. *See* 12 CFR § 7.4000(b); Office of Thrift Supervision Integration; Dodd-Frank Act Implementation*, 76 Fed. Reg. 43549-01, 43552, 43558 (July 21, 2011).

Accepting Credit One's argument that the OCC allows *only* state attorneys general to bring enforcement actions against national banks would mean that actions brought against national banks by federal or state agencies or, for that matter, individuals would be forbidden as unlawful exercises of visitorial powers. Such a result is wrong. It contradicts established law and is unsupported by any legal authority cited by Credit One. *See Cuomo*, 557 U.S. at 529–30; *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 726 (9th Cir. 2012).

Moreover, accepting Credit One's argument would raise serious anti-commandeering concerns under the Tenth Amendment. In *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018), the Court struck down the Professional and Amateur Sports Protection Act. That law forbade states that did not allow sports gambling in 1992, when the law was passed, from changing their laws to authorize sports gambling. *Id.* at 1470. The Court held that, even though it did not require states to carry out a federally enacted regulatory scheme, the law nevertheless violated the anti-commandeering doctrine because it "unequivocally dictates what a state legislature may and may not do" by issuing a "direct order" that a state may not repeal its sports gambling laws. *Id.* at 1479.

Here, Credit One argues that although the state has the sovereign power to enforce its statutes, federal law commands that the state's sovereign power may be exercised only by the attorney general and that the state is forbidden from passing legislation that delegates its sovereign enforcement power to district attorneys. Such a "direct order" by the federal government would potentially run afoul of the anti-commandeering doctrine. We do not reach this issue, however, because we conclude that neither the regulation nor the statute can be interpreted to bar district attorneys from bringing civil enforcement actions against national banks under non-preempted state laws.

3.

Having established that Hestrin has the power to bring the state action, we return to the second element of the *Younger* analysis: whether there was an "important state interest" implicated in the state action. Credit One's argument that there can be no important state interest present in the state action because federal law forbids Hestrin from bringing the state action fails. In the state action, Hestrin acts in an "enforcement posture" and thus the important state interest requirement "is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake." *Potrero Hills Landfill*, 657 F.3d at 883–84. Hestrin's state action seeks to enforce the state's consumer protection laws, undoubtedly an important interest. *Commc'ns Telesystems Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1017 (9th Cir. 1999). Thus, the district court correctly concluded that an important state interest was present in the state action.

In sum, the district court correctly abstained after concluding that all four of the *Younger* abstention

requirements were met. First, the state action was an ongoing judicial proceeding. Second, it implicated an important state interest in consumer protection and nothing in federal law prevents a district attorney from vindicating that interest by suing a national bank. Third, Credit One may raise its federal defense under the NBA in the state proceeding. And finally, the relief Credit One requested in the district court sought to enjoin the state action.

## CONCLUSION

For these reasons, we **AFFIRM** the District Court's order.